UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **EMILY FLOOD,** *individually and on behalf of all others similarly situated,*<br><br>     *Plaintiff,*<br><br>v.<br><br>**BELIV, LLC,**<br><br>     *Defendant.* | Case Number: 8:24-cv-2993<br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

COMES NOW the Plaintiff, EMILY FLOOD ("Plaintiff" or "Ms. Flood"), on behalf of herself and all others similarly situated, by and through her attorneys, and complains of the Defendant, BELIV, LLC ("Defendant" or "Beliv"), stating as follows:

**DESCRIPTION OF THE CASE**

1.  Defendant labels, markets, and sells berry acai, guava passion fruit, mango, and prickly pear and lime-flavored plant-based energy drinks under its Oca® brand (hereafter referred to each as a "Product" and together as the "Products").

2.  Defendant marketed and sold the Products using a label which prominently displayed "NO Preservatives," alongside a series of similar health-related claims.  See attached Exhibit A.

3.  However, Beliv's claim that the Products contain "no preservatives" is false, as the Products contain a significant amount of citric acid.

4. Citric acid is classified as a preservative by the Federal Food and Drug Administration. 21 CFR § 582.6033.

5. Despite unequivocally and boldly claiming that its Products contain "no preservatives," the inclusion of citric acid belies this affirmation, rendering it false, misleading, and in violation of the law.

6. As a result of Beliv's false and misleading labeling, Beliv was able to sell the Products to thousands of unsuspecting consumers throughout Florida and the United States, and to charge a price-premium.

7. Beliv's false representations amount to a breach of warranty, violate Florida's Uniform Commercial Code, § 672.313, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act, § 501.201, Fla. Stat., *et seq.* ("FDUTPA"), Florida's prohibition against false, misleading, and deceptive advertising and sales, § 817.41, Fla. Stat., and are otherwise grounds for restitution based on quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

8. This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2). Defendant is a Puerto Rican limited liability company with its principal place of business in San Juan, Puerto Rico. Defendant markets and sells the Product online via Amazon, as well as in grocery stores throughout the United States, including Walmart and Wholefoods. Members of the class therefore reside throughout the United States. The amount in controversy exceeds $5,000,000 for Plaintiff and the putative Class, exclusive of interest and costs, as Defendant charged

a price-premium for the Products in each transaction with Plaintiff and the putative Class.

9. This Court has supplemental jurisdiction over the Florida subclass, as such claims arise out of the same case or controversy as Plaintiff's claims against the nationwide class.

10. Jurisdiction is proper according to the Class Action Fairness Act of 2005 (hereafter also referred to as "CAFA"). 28 U.S.C. § 1332(d)(2).

11. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this cause of action occurred within Hillsborough County, Florida, which is in this District and Division.

## THE PARTIES

### Plaintiff

12. Ms. Flood is a natural person domiciled in Hillsborough County, Florida.

13. Ms. Flood owns real property in Hillsborough County, Florida, at which she permanently resides.

14. The property in Hillsborough County, Florida is Ms. Flood's true, fixed, and permanent home.

15. Ms. Flood is a *Consumer* as defined by FDUTPA, § 501.203(7), Fla. Stat.

### Beliv

16. Beliv is a Puerto Rican limited liability company with a principal business address of 1511 Ave. Ponce De Léon, Ciudadela Suite 24, San Juan, PR, 00923.

## FACTUAL ALLEGATIONS

17. On or about August 29, 2024, Ms. Flood purchased the following Products from Whole Foods Market, located on Northdale Blvd. in Tampa, Florida:

    a. Two 12 fl. oz. can of the guava Product; and,

    b. One 12 fl. Oz. can of the mango Product.

18. On or about October 30, 2024, Ms. Flood purchased a 12 fl. oz. can of the berry acai Product.

19. The label of each Product contained the following image, prominently:



20. The label of each Product therefore unequivocally indicated that the Product contained no preservatives.

21. Despite this, each Product contained citric acid.

22. Each Product's ingredient list on the label indicates citric acid as an ingredient. See attached **Exhibit A.** Ms. Flood understood each Product's label as indicating the respective Products did not contain any preservatives.

23. Ms. Flood believed that Defendant lawfully marketed and sold the Products.

24. Ms. Flood relied on Defendant's labeling and was misled thereby.

25. Ms. Flood would not have purchased the Products, or would have purchased the Products on different terms, had she known the truth about its contents.

26. Ms. Flood was injured in fact and lost money as a result of Defendant's improper conduct.

27. If Ms. Flood had reason to believe that Defendant's marketing and labeling was truthful, non-misleading, and lawful, she would purchase Defendant's Products in the future.

### Citric Acid Is a Preservative

28. The federal Food Drug & Cosmetic Act ("FDCA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5).

29. "A food to which a chemical preservative(s) is added shall…. bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative", "to retard spoilage", "a mold inhibitor", "to help protect flavor" or "to promote color retention." 21 C.F.R. § 101.22(j).

30. Chemical preservation is the process of adding ingredients to a food for the purpose of preventing potential damage from oxidation, rancidity, microbial growth, or other undesirable changes. Chemical preservatives may be both natural or synthetic and function one of several ways — (a) as an antimicrobial agent to destroy bacteria or inhibit the growth of mold on foods; (b) as an antioxidant to inhibit

oxidation and resulting rancidity; and (3) as a chelating agent which binds metal ions in certain foods to prevent oxidation.

31. Among other uses, citric acid's acidity makes it difficult for mold, bacteria, or any negatively impacting substance to survive and grow on foods.

32. Citric acid is thus a preservative within the meaning of 21 C.F.R. § 101.22.

33. Indeed, in a consumer facing publication, *Food Ingredients and Colors*, the Food and Drug Administration ("FDA") unequivocally identifies "citric acid" as a preservative.[1]

34. The sentiment is echoed in the Substances Added to Food database maintained by the FDA, in which the principal technical effects citric acid are identified as preservative functions, such as "Antimicrobial Agent" and "Antioxidant."[2]

---

[1] *Food Ingredients and Colors*, International Food Information Council Foundation and U.S. Food and Drug Administration, specifically identifies the following as preservatives: ascorbic acid, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E). Available at https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited August 28, 2024)

[2] The Substances Added to Food Database formerly Everything Added to Foods in the United States, available at https://www.cfsanappsexternal.fda.gov/scripts/fdcc/?set=FoodSubstances&sort=Sortterm_ID&order=ASC&startrow=1&type=basic&search=citric%20acid (last visited August 28, 2024)

35. Finally, in a Warning Letter issued to Chiquita Brands International, Inc. and Fresh Express, Incorporated, October 6, 2010, the FDA made clear that citric acid was a preservative and needed to be identified as such.[3]

### Consumer Demand for Preservative Free Products

36. The clean label movement has been called "the largest shift in American food habits since World War II."[4]

37. The term encompasses many things, but is most often associated with foods that are natural, healthy, and devoid of additives and preservatives.[5]

38. By representing the Products as containing "no preservatives," Defendant seeks to capitalize on consumer preferences for clean label products.

39. Indeed, "[foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health." "84 percent of Americans buy "free-from" foods because they believe them to be more natural or less processed." Among such consumers, preservative free ranks "[a]mong the top claims… deem[ed] most important."[6]

---

[3] http://fda-warning-letters.blogspot.com/2010/10/fresh-express-incorporated-10610.html (last visited August 28, 2024).

[4] Clean Labels, Public Relations or Public Health, Center For Science in the Public Interest (2017), available https://www.cspinet.org/sites/default/files/2022-03/Clean%20Label%20report.pdf (last visited August 28, 2024).

[5] Clean label trend is evolving - consumers still willing to pay a price premium, Valio, May 29, 2023. Available at https://www.valio.com/food-solutions-for-companies/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/ (last visited August 28, 2024).

[6] *See, Free-from Food Trends US 2015 Report,* MINTEL, Available at https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed August 28, 2024).

40. In a survey undertaken by L.E.K, around 1600 consumers were asked which claims were the most important to them when buying food and drink products. Results indicated the most popular claim to be 'no artificial ingredients.' This was followed closely by 'no preservatives'…."[7]



Figure 2
Percentage of US consumers purchasing 'frequently or always' based on food claim (2018)

Note: Question: How frequently has your household purchased food with the following attributes or claims over the past 12 months when they were available?
Source: L.E.K. Consumer Survey and analysis

41. By failing to properly label the Products, Beliv has misled and deceived consumers in violation of the law.

**Economic Injury**

42. As a result of Defendant's unlawful and deceptive conduct, Plaintiff and members of the Class have been harmed.

43. In reliance on the claims made by Defendant regarding the qualities of its Product, Plaintiff paid a price premium.

---

[7] https://www.lek.com/insights/ei/clean-label-food-ingredients

44. As a result of her reliance on Defendant's misrepresentations, Plaintiff received Products which lacked the promised ingredients which she reasonably believed they contained.

45. Plaintiff received Products which were unlawfully marketed and sold.

46. Plaintiff lost money and thereby suffered injury, as she would not have purchased the Products and/or paid as much for the Products absent the misrepresentation.

47. Defendant knows that its claim the Products are free of preservatives is material to a consumer's purchasing decision.

48. Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amounts she paid for the Products she purchased, and/or in additional amounts attributable to the deception.

49. By engaging in the false and deceptive conduct alleged herein, Defendant reaped financial benefits in the form of sales and profits from its Products.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action on behalf of herself and on behalf of a class of all others similarly situated consumers defined as follows:

   a. **National (the "Class")**: All persons in the United States who purchased any of the Products in the United States during the Class Period.

   b. **Florida (the "Florida sub-class")**: All persons who purchased any of the Products in Florida during the Class Period.

  c. **Class Period**: the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

51. Plaintiff brings this action on behalf of the Class, which includes the Florida sub-class, pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

52. Excluded from the Class are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

53. Upon information and belief, there are tens of thousands of Class members in the Class, including tens of thousands in the Florida sub-class. Therefore, individual joinder of all members of the Class and Florida sub-class would be impracticable.

54. Common questions of law or fact exist for all Class members. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include:

  a. Whether Defendant marketed, packaged, or sold the Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

  b. Whether Defendant omitted or misrepresented material facts in connection with the sale of its Products;

  c. Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

    d.    Whether Defendant's actions violate Florida's Uniform Commercial Code;

    e.    Whether Defendant's actions violate Florida's prohibition against false advertising, § 817.41, Fla. Stat.;

    f.    Whether Defendant's actions violate FDUTPA;

    g.    Whether Defendant should be enjoined from continuing the above-described practices;

    h.    Whether Plaintiff and members of the putative Class are entitled to declaratory relief; and

    i.    Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

55. Plaintiff's claims are typical of each Class members' claims. Plaintiff was a consumer who purchased Defendant's Products, which Products falsely represented they contained "No Preservatives." Plaintiff is no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

56. Plaintiff is an adequate representative of the Class because her interests do not conflict with the Class members' interests. Plaintiff has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

57. A class action is superior to other available means for this dispute's fair and efficient adjudication. The damages suffered by each Class member likely will be

relatively small, especially given the relatively small cost of the food products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for Class members individually to effectively redress the wrongs done to them.

58. Moreover, even if Class members could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

59. In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to each member, making appropriate preliminary and final equitable relief for the Class.

60. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

### COUNT I
### BREACH OF EXPRESS WARRANTY
### National Class & Florida Sub-Class

61. Plaintiff adopts and incorporates Paragraphs 1 – 60 as if fully stated herein.

62. Plaintiff incorporates each and every allegation contained in the paragraphs above as if re-stated herein.

63. Defendant made express warranties to Plaintiff and members of the putative Class that the Products they purchased contained no preservatives.

64. The express warranties made to Plaintiff and members of the putative Class appear on every Products' label.

65. This warranty regarding the nature of the Products marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

66. Plaintiff and the putative Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

67. Defendant breached the express warranties made to Plaintiff and members of the putative Class by failing to supply goods that conformed to the warranties it made, specifically by providing Products which contained citric acid.

68. Plaintiff and the members of the putative Class paid money for the Products. However, Plaintiff and the members of the putative Class did not obtain the full value of the advertised Products. If Plaintiff and other putative class members had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

69. Plaintiff and the putative Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

70. All conditions precedent to this action have been met. Prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607. Defendant failed to make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit C.**

## COUNT II
## VIOLATION OF § 817.41, FLA. STAT.
### On behalf of the Florida Sub-Class

71. Plaintiff adopts and incorporates Paragraphs 1 – 60 as if fully stated herein.

72. Defendant engaged in false advertising when it represented that the Products contained no preservatives, despite containing citric acid.

73. Defendant intended for consumers like Ms. Flood and the putative Florida sub-class members to rely on this false advertising when looking at beverages to purchase.

74. Ms. Flood and the putative Florida sub-class members did rely on Defendant's representations when purchasing the Products.

75. As a direct and proximate result of Defendant's false advertising, Plaintiff and the putative Florida sub-class members were injured and suffered damages and are entitled to actual damages, attorneys' fees, and costs.

76. Ms. Flood and the Florida sub-class relied on Defendant's false advertising to their detriment, purchasing the Product and paying a price premium due to Defendant's misrepresentations.

77. The injuries suffered by Plaintiff and the Florida sub-class include, but are not limited to, paying for Defendant's Products, paying a premium price for Defendant's falsely advertised Products, and the unlawful profits Defendant earned from the sales of these falsely advertised Products.

## COUNT III
## VIOLATION OF § 501.204, FLA. STAT.
### On behalf of the Florida Sub-Class

78. Plaintiff adopts and incorporates Paragraphs 1 – 60 as if fully stated herein.

79. The Products are each a tangible good with value.

80. Defendant advertised, solicited, provided, offered, and/or distributed the Products in Florida.

81. The Defendant thus engaged in "trade or commerce" within the state of Florida, as defined in § 501.203(8), Fla. Stat.

82. § 501.204(1), Fla. Stat. prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

83. Defendant has mislabeled and misbranded the Products by falsely warranting that the Products do not contain preservatives, when each Product contains citric acid.

84. Such mislabeling and misbranding constitutes unfair and deceptive conduct in violation of § 501.204(1), Fla. Stat.

85. The Defendant's violations of § 501.204(1), Fla. Stat. were willful and knowing.

86. As a direct and proximate result of Defendant's unfair and deceptive acts, Plaintiff and the Florida sub-class were injured and suffered damages and are entitled to actual damages, attorneys' fees, and costs.

87. The injuries suffered by Plaintiff and the Florida sub-class include, but are not limited to, paying for Defendant's Products, paying a premium price for Defendant's falsely advertised Products, and the unlawful profits Defendant earned from the sales of these falsely advertised Products.

88. Accordingly, on behalf of herself and all others similarly situated, Plaintiff seeks restitution from the Defendant and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendant from its wrongful conduct.

89. Plaintiff and the Florida sub-class members are also entitled to injunctive relief in the form of an order directing Defendant to cease their false and misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

### COUNT IV
### UNJUST ENRICHMENT
### National Class & Florida Sub-Class

90. Plaintiff adopts and incorporates Paragraphs 1 – 60 as if fully stated herein.

91. Plaintiff asserts this claim on behalf of Plaintiff and the Class, to the

extent that any contracts do not govern the entirety of the subject matter of the disputes with Defendant.

92. Plaintiff and the Class conferred a benefit to the Defendant in the form of monies paid to the Defendant when purchasing the Products, which Defendant had mislabeled and misbranded.

93. The Defendant knew or should have known of the benefit.

94. It would be inequitable and unjust for the Defendant to retain the profits, benefits, compensation, consideration, and other monies obtained by and from its wrongful conduct in promoting, marketing, distributing, and selling the mislabeled Products.

95. Accordingly, on behalf of herself and all others similarly situated, Plaintiff seeks restitution from the Defendant and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendant from its wrongful conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that the Court enter judgment on behalf of herself and the Class for:

a. Certification for this matter to proceed as a class action on behalf of the National Class and Florida sub-class;

b. An award of actual damages as pled herein;

c. Injunctive relief as pled herein;

    d.    An award of pre-judgment and post-judgment interest as provided by law;

    e.    An award of attorneys' fees, litigation expenses, and costs of suit;

    f.    Such other relief as the Court deems just and proper.

<strong><u>JURY TRIAL DEMANDED</u></strong>

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted on **December 27, 2024**, by:

                       **SERAPH LEGAL, P. A.**

                       */s/ Bryan J. Geiger*
                       Bryan J. Geiger, Esq.
                       Florida Bar No.: 119168
                       BGeiger@SeraphLegal.com
                       2124 W. Kennedy Blvd., Ste. A
                       Tampa, FL 33606
                       Tel: 813-567-1230
                       *Attorneys for Plaintiff*

**ATTACHED EXHIBIT LIST**

A    Example of the Product's Label
B    Pre-Suit Notice to Defendant